**INMATES OF THE ALLEGHENY COUNTY JAIL, Thomas Price Bey, Arthur Goslee, Robert Maloney, and Calvin Milligan on their own behalf and on behalf of all others similarly situated, Plaintiffs,**

v.

**Cyril H. WECHT, President of the Allegheny County Board of Prison Inspectors and the other members of the Board: Thomas Foerster and William H. Hunt, Commissioners for Allegheny County; Frank J. Lucchino, Controller for Allegheny County, Eugene Coon, Sheriff for Allegheny County; the Honorable Patrick R. Tamilia, Michael J. O'Malley and Marion K. Finkelhor, Judges Court of Common Pleas of Allegheny County; Richard S. Caliguiri, Mayor of the City of Pittsburgh; Harriet McCray; Monsg. Charles Owen Rice and Charles Kozakiewicz, Warden of the**

**Allegheny County Jail, and William B. Robinson, Executive Director of Prison Inspectors, and Cyril Wecht, Thomas Foerster and William H. Hunt, as Commissioners of Allegheny County, Defendants,**

v.

**COMMONWEALTH OF PENNSYLVANIA, Third–Party Defendant.**

Civ. A. No. 76–743.

United States District Court, W.D. Pennsylvania.

March 30, 1994.

Peter G. Nychis and Timothy W. Pawol, Asst. Allegheny County Solicitors, Pittsburgh, PA, for defendant Allegheny County.

Donald Driscoll, Neighborhood Legal Services Assn. and Jere Krakoff, Pittsburgh, PA, for plaintiffs.

Thomas F. Halloran, Office of Atty. Gen., Western Regional Office and Lynette Norton, Picadio McCall Kane & Norton, Pittsburgh, PA, for third-party defendant.

## MEMORANDUM ORDER

COHILL, District Judge.

The new Allegheny County Jail building has arisen! Located on the Monongahela riverfront, its size and solidity convince the undersigned that it is no mirage. It has been almost two decades since the litigation concerning jail conditions was first initiated.

Ironically enough, the early problems were related to sanitary conditions and the humane treatment of prisoners, not overcrowding. When I wrote the first opinion in this case (442 F.Supp. 1368 (W.D.Pa.1978)), I stated, "Overcrowding is not a problem. In 1975 the average daily population was 429." *Id.* at 1376. The old jail contained about 600 cells, but as many as 200 at a time were unusable because of the need for repairs.

By 1983 the average daily population was 644.

While inmate populations have recently fluctuated a great deal, we can say that the County now has approximately 1270 inmates in secure custody: 645 in the old jail; 450 in the so-called "Jail Annex," the former Jones Law Building; and 175 in the former Public–Safety Building; additional inmates are housed in rented jail space in other counties and in community-based centers of one sort or another. *See* Allegheny County Jail Annual Reports, 1992 and 1993.

The new jail will have a maximum capacity of 2400 prisoners.

Since 1976, when this case was filed, there have been untold numbers of motions, hearings, orders and appeals. It took years for the squalid conditions which existed in 1976 to be alleviated. Efforts to improve grossly inadequate sanitation and housing conditions were thwarted over time by a steadily increasing jail population until it reached the crisis proportions I have just described.

Despite the creation of extra space and the use of numerous external facilities, the inmate population has continued to overflow all available areas. In just one month, January 1994, the Warden reported that there were over 250 inmates who could not make bond but who were released from custody on so-called "Cohill Bonds" due to overcrowding.

There have been times when the problems associated with the Allegheny County Jail appeared insoluble; there were times when court orders appeared to be ignored; there were (and are) times when fines have been imposed. Recently, however, this Court has been more than satisfied with the strides made by the defendants in controlling the conditions of confinement. *See* report of Lynette Norton, Esq., Court Monitor, January 21, 1994, describing the "high level of consistency in conditions" at the jail for the last year. In their efforts to provide for the expanding population the County Commissioners apparently will have succeeded when the new jail opens late this year. *See* monthly reports to the Court by Robert Coll and Herbert Higginbotham during 1993–94.

The parties, the lawyers and this Court all have been subjected to public criticism from time to time during these eighteen years, but the defendants have now faced up to their responsibilities, apparently putting aside concerns of public opinion.

Critics have accused the court of "coddling" prisoners. I need only remember the stench which assailed the nostrils when I entered the jail for the first time in 1976, or recall the sight of human beings strapped down on canvas cots, their wrists and ankles held tight by leather thongs, to take comfort in believing that regardless of what the critics said, what I ordered was the right thing to do. I have appreciated the general support of the editorial boards of the major local news media through this laborious process.

On July 17, 1989 I imposed serial fines on the County for violating my orders regarding prisoner population. Since that time the County has paid to the Clerk of this Court $2,729,300.00.

"Justice," as Judge Learned Hand once described it, "is the tolerable accommodation of the conflicting interests of society. I don't

believe there is any royal road to attain such accommodations concretely." [1]

While justice rarely comes easily, we must all remember that justice must be the basic goal not just of the judiciary, but of our elected representatives and of the citizens themselves. Each of us has a role to play. Ideally, those roles should dovetail without the excessive friction or frustration which has sometimes plagued this litigation.

It has also been said that while the human inclination to injustice makes democracy necessary, it is the human capacity for justice which makes democracy possible.

Today this Court pauses to recognize the distance that the defendants have come in living up to their obligations in our constitutional democracy—that is, in doing justice on their own initiative.

The defendants have not petitioned formally for the return of the fines heretofore imposed; the court is issuing this Order of its own volition, *sua sponte.*

An appropriate order will issue relieving the defendants of further fines so long as they remain in substantial compliance with this Court's orders relating to prison conditions until completion of the new facility, and so long as they continue with a good faith effort to meet population limits in existing facilities. Fines previously paid will be returned for the exclusive purpose of contribution to the jail construction or drug rehabilitation programs.

AND NOW, to-wit, this 30th day of March, 1994, it is ORDERED, ADJUDGED and DECREED that:

1. The Order of this Court entered July 17, 1989, imposing fines on the defendants for the unauthorized release of prisoners be, and the same hereby is VACATED.

2. All fines paid into the office of the Clerk of Court pursuant to said Order dated July 17, 1989, to-wit, $2,729,300.00 shall be returned to the County of Allegheny by the Clerk of Court forthwith.

3. Said funds shall be used by the County of Allegheny to contribute to the cost of jail construction or for drug rehabilitation programs previously approved by this Court.

---

1. Learned Hand, quoted by Phillip Hamburger, *The Great Judge,* 1946.